THE BELMONT MINING AND MILLING COMPANY ET AL. v. COSTIGAN ET AL.

1. MEASURE OF DAMAGES ON INJUNCTION BOND.

In an action upon an injunction bond, where the obligees had been restrained from selling real estate under a deed of trust given to secure the payment of a note, interest on the note, or rather the equivalent of interest, may be a proper element of damage. But where it does not appear that the sum for which the property sold after the dissolution of the injunction was less than it would have brought had the sale not been delayed, the rule seems to be the allowance of simple compensation for the actual loss sustained.

2. SAME.

It is proper to award as damages, in a suit on an injunction bond, the amount paid as counsel fees for services in procuring a dissolution of the injunction.

3. INTEREST—COSTS ON APPEAL.

Where the judgment appealed from was for $3,000, and, in consequence of a ruling in this court that appellees were entitled to judgment for $500 only, they remitted the excess, they are held not to be entitled either to interest on the latter amount or to the costs of appeal.

*Appeal from the District Court of San Miguel County.*

THE BELMONT MINING AND MILLING COMPANY brought an action against Costigan and his wife as the payees of certain promissory notes, and against Hamilton as the trustee named in a deed of trust given to secure said notes and covering the Belmont mine, the object of which, among

other things, was to obtain a decree of court canceling said notes and deed of trust, which purported, as it was alleged, to have been executed by the plaintiff company, but which, it was claimed, were fraudulently given.

As ancillary to the main relief sought, a temporary writ of injunction was sued out by the plaintiff company restraining the defendants from selling said mine under said deed of trust, notice of the sale of which was then being advertised in accordance with the provisions of the instrument.

The temporary writ was issued and served on the defendants on the 22d of October, 1888, and thereafter, and on the 28th day of January, 1889, it was dissolved by the court on the application of the defendants.

The present action is upon the injunction undertaking given in the case just mentioned. Upon trial to the court without a jury, findings were made in favor of the plaintiff, and a judgment for $3,000, the full penalty of the bond, was rendered against the obligors, the principal and sureties upon the injunction undertaking, from which they have appealed to this court.

Mr. JOHN S. MOSEBY, JR., Mr. H. W. HOBSON and Messrs. PATTISON, EDSALL & HOBSON, for appellants.

Mr. H. M. HOGG, Messrs. PENCE & PENCE, Messrs. PENCE & McGINNIS, Messrs. GOUDY & TWITCHELL and Mr. GEORGE P. COSTIGAN, JR., for appellees.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The only question in this case that calls for our consideration is the measure of damages adopted by the trial court. The theory of the complaint was that one element of damages was the loss of interest upon the full amount of indebtedness represented by the notes at the rate therein fixed, from the time the injunction was issued until dissolved, and another element of damage was the counsel fees paid

by the defendants in the original suit and necessary expenses incurred by them in securing a dissolution of the injunction. There were other elements of damage relied on in the complaint, but the evidence which is brought up in the record was directed only to these two elements.

The only evidence in the case was that of Costigan, one of the obligees in the bond, from which it appears that he paid out the sum of $500 as counsel fees and expenses necessarily incurred to obtain a dissolution of the injunction. In addition to this sum, the only testimony as to any damages or loss sustained by the obligees was the claim that during the pendency of the injunction (which was three months and five days) the defendants were deprived of interest upon the full amount of the indebtedness secured by the trust deed, which at that time was $125,966.10.

From this evidence the court found that the damages to the obligees resulting from the issuing of the injunction were the amount paid by them as counsel fees and expenses, and the interest upon the full indebtedness as claimed; but as the penalty of the bond was only $3,000, judgment in this action was rendered only in such sum.

Under the decision of this court in *Tabor v. Clark*, 15 Colo. 434, it was proper to award as damages the amount paid as counsel fees for services rendered in dissolving the injunction, and the evidence in this case supports the finding of the court in that respect. At the sale, subsequent to the dissolution of the injunction, the holders and owners of the notes bid in the property, but the amount of the bid does not appear from the record, except that it was a sum much less than the face value of the notes. There was no testimony tending to show that had not the injunction been issued, the property would probably have been sold at the time fixed in the advertisement of sale for a sum equal to, or any greater than, that for which it was sold when advertised the second time.

In a suit upon an injunction bond, where the holders of a note (the obligees in said bond) have been restrained from

selling real property under a trust deed given to secure the payment of the note, interest—or rather that which is equivalent to interest—may be a proper element of damages. In some cases, such sum may possibly be the only element, while in other cases it may be much less or much more than the actual damages sustained. *City of St. Louis v. Alexander*, 23 Mo. 520; *Hill v. Thomas*, 19 S. C. 230.

The true rule of measure of damages in such cases seems to be simple compensation for the actual loss sustained. High on Injunctions, sec. 1665.

The granting of the injunction does not, in a case like this, necessarily prevent the collection of money, and the rule of damages in the latter case would not, therefore, necessarily be the same as in the former.

Under the evidence in this case, the court erred in computing as an element of loss interest on the full amount of indebtedness represented by the notes; for there is nothing in the evidence to show that had the sale been made as first advertised, there was a reasonable probability that it would have been sold for as large an amount as it did bring when actually sold, or that it would have brought more,—which actual selling price, as we have said, the record does not disclose. For aught that appears in the evidence, the property, sold when the injunction was dissolved, brought as much as, or more than, it would have brought had not the injunction been granted; and if so, obligees suffered no such damages as were here awarded. Bearing upon the probabilities as to what would have happened had the sale not been interfered with by the obligors, there is only the evidence of Costigan, one of the obligees, to the effect that his intention at that time was to purchase the property, when sold, for the amount of the notes, if others had not bid a like sum, and then to take possession of the property and work it.

Had not the injunction issued, we may assume, in the absence of evidence tending to show that others would probably have bid a like sum, that such purchase by the owners of the note would have been carried out. The indebtedness

of the maker of the notes would then have been canceled, and the obligees (the payees of the notes) would have been entitled to the possession of the property. This indebtedness would have been wiped out, not by the payment of any amount of money, but by the taking of the property by the payees of the note in satisfaction of their debt. By the injunction, however, they were kept out of possession three months and five days. When they did buy the property, so far as we are advised, it was worth to them as much as it would have been had they bought it when first offered for sale. Their injury, therefore, if meanwhile the property had not depreciated in value, would have been compensated for by the payment to them of the rental value of the property, or the value of the possession of the mine.

In any event, interest would be an element of loss only in case it should appear that a certain amount of money would probably have been received by the owners of the notes, had not the act of plaintiffs stopped the sale; and it could not be reckoned on any sum greater than what the evidence fairly shows would have been realized.

At the sale it appears that they did bid in the property, but the amount of their bid is not shown, nor is there any effort to show depreciation in the value of the property during the pendency of the injunction, or the value of the possession, so that it is difficult to perceive how the court could ascertain the amount of damages upon the evidence. In the absence of a showing that the proceeds of the sale were less than they would have been had not the obligors delayed the sale, or that less was realized therefrom than might, and probably would, have been received had not this unlawful interference taken place, there could not be awarded interest, or its equivalent, upon a larger sum than that actually realized when the property was sold. But, as has already been said, as there is nothing in the record showing for what amount the property was sold, there is no basis upon which the court could determine the amount of interest lost to the obligees.

We may add that ordinarily an element of damage in a case like this, and which might be the only element, would be the difference between what was actually realized from the sale and what would or might probably have been realized had not the act of the wrongdoer delayed the sale. Whether this would, or would not, be the same in amount as the interest upon the sum realized from the sale, the evidence does not enable us to determine.

For the error in respect to the awarding of interest as an element of damage, the judgment of the court should be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*

### ON REHEARING.

PER CURIAM. In their petition for rehearing appellees expressly waive any claim or right to the judgment of $3,000 rendered below, in excess of the sum of $500, for which we held they were entitled to a judgment. The appellees insist that they should have interest on that amount and the costs of this appeal. But they are entitled to neither, for the appellants might have been willing to pay the judgment below had it been only in the sum of $500. Appellees should pay the costs of this appeal, while appellants should pay the costs of the trial in the district court. The former judgment of this court is, therefore, vacated, and the judgment of the lower court will be modified by entering judgment in favor of the plaintiffs against the defendants in the sum of $500 and the costs of trial in the court below, and as thus modified it is affirmed. The cause is remanded with instructions to the district court to enter judgment in accordance with this opinion.